Meriel L. Darzen, OSB No. 113645, *applicant, pro hac vice*
meriel@crag.org
Oliver J. H. Stiefel OSB No. 135436, *applicant*, *pro hac vice*
oliver@crag.org
Crag Law Center
3141 E Burnside Street
Portland, Oregon 97214
Phone: (503) 525-2725
Fax: (503) 296-5454

Thomas E. Wheeler, CSB No. 304191
tom@wildcalifornia.org
Environmental Protection Information Center
145 G St., Ste. A
Arcata, California 95521
Phone: (206) 356-8689
LOCAL COUNSEL

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KLAMATH-SISKIYOU WILDLANDS CENTER,** an Oregon non-profit corporation**; ENVIRONMENTAL PROTECTION INFORMATION CENTER,** a California nonprofit corporation**; and KLAMATH FOREST ALLIANCE,** a California non-profit corporation**,**<br><br>        Plaintiffs,<br>   vs.<br><br>**PATRICIA GRANTHAM,** in her official capacity as Forest Supervisor of the Klamath National Forest**; BARNIE GYANT,** in his official capacity as Deputy Regional Forester for Region 5; **and the UNITED STATES FOREST SERVICE,**<br><br>        Defendants. | Case No.: CV-<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(NATIONAL FOREST MANAGEMENT ACT, NATIONAL ENVIRONMENTAL POLICY ACT, ADMINISTRATIVE PROCEDURE ACT CLAIMS) |

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 1

## INTRODUCTION

1.      Plaintiffs Klamath-Siskiyou Wildlands Center, Environmental Protection Information Center, and Klamath Forest Alliance ("Plaintiffs") bring this challenge to the final agency action of Patricia Grantham, Barnie Gyant, and the United States Forest Service ("Defendants" or "Forest Service") to approve a timber sale on the Klamath National Forest ("KNF") known as the "Crawford Vegetation Management Project" ("Crawford Project" or "Project").

2.      Defendants first proposed the Crawford Project, which calls for logging in stands of mature and old trees, as well as younger plantations, in 2011. The Project is located approximately 15 miles southwest of Happy Camp, Siskiyou County, California. The Project area is approximately 11,000 acres, of which approximately 1,650 acres would be logged or subject to some form of vegetation management.

3.      Plaintiffs have actively participated in the public process for the Project and have, at each step of the process over 9 years, cautioned Defendants against approving a project that would result in harm to imperiled species and their habitat. Plaintiffs repeatedly asked the Forest Service to honor the purpose and need of the Project by utilizing the existing transportation system to manage previously logged second-growth timber stands, while retaining the remaining old-growth and mature forest habitat.

4.      Ultimately, Defendants ignored Plaintiffs' cautions and suggestions and finalized a decision authorizing a logging project that results in significant environmental impacts and is inconsistent with applicable law and regulation, forcing Plaintiffs to bring this legal challenge.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 2

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    5.    The Project is particularly egregious because of its expected impacts to northern

2    spotted owls, a species listed as "threatened" under the Endangered Species Act ("ESA"), 16

3    U.S.C. § 1531 *et seq.*, and whose population is continuing to decline. Alarmingly, by authorizing

4    the logging of old growth and mature trees inside occupied but already habitat-deficient owl

5    home ranges, the Project is reasonably certain to "take" two of the last remaining reproductively

6    successful northern spotted owl pairs on the KNF.

7    6.    Defendants also made an arbitrary and unsupported decision to withdraw their

8    initial decision to prepare an environmental impact statement ("EIS") and instead prepare a much

9    less rigorous environmental assessment ("EA"), despite previously determining that the Project

10    would have significant environmental impacts as a result of the harm to northern spotted owls.

11    7.    Finally, Defendants failed to supplement their environmental analysis despite

12    their legal obligation to do so in light of significant new information and changed circumstances

13    regarding the impacts of the Project on the Pacific fisher, which has been found in the Project

14    area. The fisher is designated by the Forest Service as a "Sensitive Species" and is proposed for

15    listing under the ESA on account of impacts to its habitat, including from logging projects.

16    8.    This action seeks declaratory and injunctive relief under the National Forest

17    Management Act ("NFMA"), 16 U.S.C. § 1600–1614, and the National Environmental Policy

18    Act ("NEPA"), 42 U.S.C. §§ 4321–4370h, and it is brought pursuant to the judicial review

19    provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. Plaintiffs

20    challenge Defendants' final agency action of issuing the final Decision Notice for the Crawford

21    Project.

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    9.    Plaintiffs seek an order holding unlawful and setting aside the Project decision

2    because: (1) Defendants have failed to ensure consistency with the Klamath Land and Resource

3    Management Plan ("Forest Plan") and the Northwest Forest Plan ("NWFP") as required by

4    NFMA; and (2) Defendants violated NEPA by failing to prepare an EIS; failing to take a "hard

5    look" at the direct, indirect, and cumulative impacts of the Project; and failing to supplement

6    their environmental analysis in light of significant new information.

7    10.    Plaintiffs further seek an injunction prohibiting Defendants from implementing

8    the Crawford Project until an EIS is prepared in conformity with NEPA, or in the alternative,

9    until an adequate NEPA analysis is completed and the Forest Service can demonstrate that the

10    project is consistent with NFMA.

11    11.    Should Plaintiffs prevail at any stage in this litigation, Plaintiffs will seek an

12    award of costs and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

13    **JURISDICTION**

14    12.    Jurisdiction over this action is conferred by 28 U.S.C. § 1346 as it presents a

15    federal question because it arises under the law of the United States, including the APA, NFMA,

16    and NEPA.  There is a present, actual, and justiciable controversy between the parties. The

17    requested relief is proper under 28 U.S.C. § 2201 (declaratory relief) and § 2202 (injunctive

18    relief), and 5 U.S.C. §§ 705 & 706.

19    13.    Plaintiffs have exhausted their administrative remedies because they submitted

20    comments on the Project Scoping Notices and EA, and objected to the Draft Decision Notice. In

21    the ordinary course, the challenged agency action is subject to this Court's review under 5 U.S.C.

22    §§ 702, 704, and 706.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 4

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1          **VENUE**

2          14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and Eastern District

3     of California Local Rule 3.2(c) because the district serves "the county in which the action

4     arises." A civil action arises in the county in which "a substantial part of the events or omissions

5     which give rise to the claim occurred…" L.R. 3.2(c). The Crawford Project area and the Klamath

6     National Forest Supervisor's office, where the Decision Notice was signed, are located in

7     Siskiyou County, which is served by the Eastern District of California.

8          15.    **Intradistrict Assignment**.  Pursuant to L.C. 3.2-d, assignment of this matter to

9     the Sacramento Division of the Eastern District is proper because Siskiyou County is served by

10    the Sacramento Division.

11         **PARTIES**

12         16.    Plaintiff KLAMATH-SISKIYOU WILDLANDS CENTER ("KS Wild") is a

13    domestic non-profit corporation organized and existing under the laws of the State of Oregon.

14    KS Wild's main offices are in Ashland, Oregon. KS Wild has 3,500 members in over 10 states,

15    with most members concentrated in southern Oregon and northern California. On behalf of its

16    members, KS Wild advocates for the forests, wildlife, and waters of the Rogue and Klamath

17    Basins and works to protect and restore the extraordinary biological diversity of the Klamath-

18    Siskiyou region of southwest Oregon and northwest California. KS Wild uses environmental

19    law, science, education, and collaboration to help build healthy ecosystems and sustainable

20    communities. Through its campaign work, KS Wild strives to protect the last wild areas and vital

21    biological diversity of the Klamath region. KS Wild is a leader in protecting California's national

22    forests and routinely monitors and comments on federal actions affecting public lands in

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 5

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    California, and engages in litigation when necessary. KS Wild is a membership organization and

2    has members who would be irreparably injured by the Crawford Project.

3            17.    Plaintiff ENVIRONMENTAL PROTECTION INFORMATION CENTER

4    ("EPIC") is a nonprofit public benefit corporation organized under the laws of California. Since

5    1977, EPIC has defended the wildlife and wild places of the Klamath Mountains and North

6    Coast Range. EPIC's mission is science-based protection and restoration of northwest

7    California's forests and EPIC seeks to ensure that a connected landscape exists for species

8    survival and climate adaptation. EPIC's advocacy utilizes community organizing, public

9    education, collaboration, and, when necessary, litigation. EPIC submits substantive comments on

10   projects that would negatively impact public and private forestlands. EPIC maintains an office in

11   Arcata, California. Most of EPIC's 2,000 members and 13,000 supporters live in northern

12   California. EPIC's members and staff use, enjoy, and recreate on public lands and Wild and

13   Scenic Rivers, including those within the Project area on the KNF, and would be irreparably

14   injured by the Crawford Project.

15           18.    Plaintiff KLAMATH FOREST ALLIANCE ("KFA") is a non-profit community

16   organization founded in 1989, based in Orleans, California. KFA has 500 members and

17   supporters. Its mission is to promote sustainable ecosystems and sustainable communities of the

18   Klamath-Siskiyou Mountain region. KFA participates in forest planning through agency

19   engagement, substantive comments, and collaboration. KFA uses law, science, place-based

20   knowledge and conservation advocacy to defend the biodiversity, wildlife, waters and mature

21   forests of the Klamath-Siskiyou bioregion. KFA's members and supporters use and enjoy the

22   Crawford Project area and would be irreparably harmed if the Project moves forward.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 6

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    19.    Plaintiffs, and their members, supporters, and staff regularly visit and enjoy the

2  Forest, including the Project area, and intend to do so again in the near future. The members,

3  supporters, and staff appreciate the aesthetics of the Forest and use the area to engage in

4  recreational, scientific, and spiritual activities, such as hiking, camping, fishing, photography,

5  watershed research, and observing wildlife.

6    20.    Plaintiffs have organizational interests in the proper and lawful management of

7  the Forest. Plaintiffs, and their members, supporters, and staff have participated extensively in

8  relevant administrative actions and have actively participated in the Project's administrative

9  process.

10    21.    Plaintiffs, and their members, supporters, their staff would sustain injury to

11  aesthetic, educational, recreational, spiritual, and scientific interests if the Project proceeds as

12  authorized. Plaintiffs, and their members, supporters, and staff have concrete plans to return to

13  the area where the Project is proposed. Unless this Court grants the requested relief, Plaintiffs,

14  and their members, and staff will be adversely and irreparably harmed by the Project.

15    22.    Defendant PATRICIA GRANTHAM is the Forest Supervisor for the KNF. Ms.

16  Grantham is sued in her official capacity. Ms. Grantham signed the Crawford Project Decision

17  Notice and Finding of No Significant Impact ("Decision").

18    23.    Defendant BARNIE GYANT is the Deputy Regional Forester for Region 5 of the

19  United States Forest Service. Mr. Gyant signed the response to Plaintiffs' objections to the

20  project. Mr. Gyant is sued in his official capacity.

21    24.    Defendant UNITED STATES FOREST SERVICE ("Forest Service") is an

22  agency within the U.S. Department of Agriculture. The Forest Service manages the KNF.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 7

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

**LEGAL BACKGROUND**

**National Forest Management Act (NFMA)**

25.     Pursuant to NFMA, management of National Forests occurs at two levels: forest and project. At the forest level, NFMA requires the Secretary of Agriculture to "develop, maintain, and, as appropriate, revise land and resource management plans for units of the National Forest System." 16 U.S.C. 1604(a).

26.     The Forest Service, which manages the National Forest System, uses these plans, called "forest plans," to guide all natural resource management activities, including use of the land for outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness. 36 C.F.R. § 219.1 (2000); 16 U.S.C. § 1604(e)(1). A forest plan is a broad, long-term programmatic planning document for the entire forest, containing goals and objectives for individual units of the forest and providing standards and guidelines for management of forest resources.

27.     The KNF is a national forest that is part of the National Forest System and is therefore subject to NFMA and its planning regulations.

28.     In 1994, the Forest Service and the Bureau of Land Management adopted the Record of Decision for the Northwest Forest Plan (NWFP). The NWFP established management requirements for all Forest Service and Bureau of Land Management land within the range of the northern spotted owl.

29.     The NWFP contains mandatory standards relating to the protection of northern spotted owls.

30.     In 1995, the Forest Service adopted the KNF Land and Resource Management Plan ("Forest Plan"), which provides standards and guidelines for project level planning within

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 8

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1   the KNF. The KNF is within the range of the northern spotted owl; the NWFP provided

2   management direction for the Forest Plan and is incorporated therein.

3          31.    At the project level, once a forest plan is in place, site-specific actions or

4   "projects" are planned and evaluated by the Forest Service.

5          32.    All management activities, actions, and projects on the KNF must comply with

6   the Forest Plan and NWFP. In the event that there are differences in management direction

7   between the two documents, the more restrictive of the two documents governs.

8          **The National Environmental Policy Act (NEPA) and the CEQ Regulations**

9          33.    NEPA is our basic charter for protection of the environment. NEPA requires that

10  a federal agency has carefully and fully contemplated the environmental effects of its action and

11  ensured that the public has sufficient information to meaningfully participate in the decision-

12  making process.

13         34.    The Council on Environmental Quality ("CEQ") promulgated uniform regulations

14  implementing NEPA that are binding on all federal agencies. 42 U.S.C. § 4342, 40 C.F.R.

15  §§ 1500 *et seq.*

16         35.    NEPA requires that federal agencies prepare an EIS for any major federal action

17  that may significantly affect the quality of the human environment. 42 U.S.C § 4332(2)(C); 40

18  C.F.R. § 1508.18(b)(4).

19         36.    To determine whether an action requires an EIS, an action agency may prepare an

20  Environmental Assessment ("EA"). 40 C.F.R. § 1501.4(b). An EA is a concise public document

21  that briefly describes the proposal, examines reasonable alternatives, and provides a listing of

22  individuals and agencies consulted. 40 C.F.R. § 1508.9. If the agency decides an EIS is not

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 9

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    required, it must supply a convincing statement of reasons that explains why a project's impacts

2    are not significant.

3        37.    To comply with NEPA, an agency must take a "hard look" at the direct, indirect

4    and cumulative environmental impacts of a proposed action. 40 C.F.R. § 1502.16.

5        38.    The NEPA documentation must provide the decisionmaker and the public with

6    adequate information, evidence, and analysis to fully assess the potential impacts of the proposed

7    action before decisions are made. 40 C.F.R. § 1500.1(b).

8        39.    Agencies are required to integrate the NEPA process with other planning at the

9    earliest possible time to ensure that planning and decisions reflect environmental values. 40

10    C.F.R. § 1501.2.

11        40.    CEQ regulations impose a duty on federal agencies to supplement their

12    environmental analysis if "the agency makes substantial changes in the proposed action that are

13    relevant to environmental concerns" or "there are significant new circumstances or information

14    relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R.

15    § 1502.9(c)(1).

### The Administrative Procedure Act (APA)

17        41.    The APA confers a right of judicial review on any person adversely affected by

18    agency action. 5 U.S.C. § 702. Plaintiffs' claims are reviewed under the APA.

19        42.    "Agency action made reviewable by statute and final agency action for which

20    there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

21        43.    Upon review, a court shall hold unlawful and set aside agency actions found to be

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 10

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with and/or without

2    observance of procedure required by law. 5 U.S.C. § 706(2).

3          44.    Upon review, a court shall set aside agency actions that are in excess of statutory

4    authority or limitation, or short of statutory right. *Id.*

5          45.    A court shall compel agency action unlawfully withheld or unreasonably delayed

6    in light of an agency's failure to act. 5 U.S.C. § 706(1).

7                              **SUMMARY OF FACTS**

8                   **Background on the Northern Spotted Owl**

9          46.    The Crawford Project affects lands that are within the range of the northern

10   spotted owl (*Strix occidentalis cauriana)* as well as individual owls that reside in the Crawford

11   Project area.

12         47.    The northern spotted owl is dark brown with a barred tail and white spots on its

13   head and breast, and it has dark brown eyes surrounded by prominent facial discs.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 11

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*



1

2    *Northern Spotted Owl. Photo from KNF FY 2018 Monitoring and Evaluation Report*

3    48.    The current range of the northern spotted owl extends from southwest British

4    Columbia through the Cascade Mountains, coastal ranges, and intervening forested lands in

5    Washington, Oregon, and California, as far south as Marin County. The range of the northern

6    spotted owl is partitioned into 12 physiographic provinces, which are distributed across the

7    range.

8    49.    The northern spotted owl is extirpated or uncommon in some parts of its range,

9    such as southwestern Washington and British Columbia.

10    50.    Timber harvest activities, along with other environmental factors such as

11    competition with the barred owl, have eliminated, reduced, or fragmented spotted owl habitat

12    sufficiently to decrease overall population densities across its range.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 12

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

51.     Northern spotted owls are territorial raptors. They are generally monogamous and usually form long-term pair bonds. Northern spotted owls range widely in search of prey but are "anchored" during the breeding season to a nest site (also referred to as an "activity center"). The 100 acres around this nest site is commonly referred to as the "nest stand."

52.     The area traversed by the individual or pair in its normal activities of food gathering, mating, and caring for young is called the "home range" or "territory", and it generally extends 1.3 miles in all directions (consisting of approximately 1662 acres) around the nest site or activity center. Northern spotted owls show a high fidelity to nest sites. Within the home range, the ½-mile radius area receiving concentrated use, typically surrounding the nest site and favored foraging area, is called the "core."

53.     Northern spotted owls generally rely on older forests (also referred to as mid- to late-successional or mid- to late-seral forests) because such forests contain the structures and characteristics required for nesting, roosting, and foraging. Suitable northern spotted owl habitat generally has moderate to high canopy closure (60 to 80 percent); a multi-layered, multi-species canopy dominated by large (>30 inches in diameter at breast height) overstory trees; a high incidence of large trees with various deformities (*e.g.*, large cavities, broken tops, dwarf-mistletoe infections, and other evidence of decadence); numerous large snags; large accumulations of fallen trees and other woody debris on the ground; and sufficient open space below the canopy for owls to fly.

54.     Suitable northern spotted owl habitat is generally categorized as either nesting/roosting habitat or foraging habitat, depending on the types of life activities it can

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 13

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    support. Northern spotted owls need sufficient quantities of both nesting/roosting and foraging

2    habitat to survive and reproduce.

3         55.    The habitat composition within cores and annual home ranges has been found to

4    be directly correlated with demographic response such as occupancy, reproductive success,

5    survival, and fitness. For example, the survival and fitness of northern spotted owls is positively

6    correlated with larger patch sizes or proportion of older forests. Conversely, northern spotted owl

7    survival is negatively correlated with forest fragmentation.

8         56.    Survival rates of northern spotted owls decrease dramatically when the amount of

9    non-habitat (including non-forest areas and sapling stands) exceeds approximately 50 percent of

10   the home range.

11        57.    The barred owl is currently displacing the northern spotted owl from historic

12   breeding territories. The extinction (loss of occupancy) probability of pairs of northern spotted

13   owls in areas where barred owls are present is triple that of areas where barred owls are not

14   found.

15        58.    The northern spotted owl was listed as "threatened" under the ESA throughout its

16   range due to "loss and adverse modification of suitable habitat as a result of timber harvesting

17   and exacerbated by catastrophic events such as fire, volcanic eruption, and wind storms." 16

18   U.S.C. § 1533(a); Determination of Threatened Status for the Northern Spotted Owl, 55 Fed.

19   Reg. 26,114 (June 26, 1990) (codified at 50 C.F.R. § 17.11(h)).

20        59.    The United States Fish and Wildlife Service ("FWS") is the agency with

21   jurisdiction over terrestrial wildlife species listed under the ESA, including northern spotted

22   owls. To facilitate the survival and recovery of northern spotted owls, FWS recommends that

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 14

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    land managers: 1) avoid habitat modification in nest stands; 2) maintain 80 percent suitable

2    nesting, roosting, and foraging habitat (400 acres) in the core area; and 3) maintain 40 percent

3    nesting, roosting, and foraging habitat in the territory.

4        60.    Pursuant to the ESA, FWS published a final revised recovery plan for the owl on

5    July 1, 2011. Endangered and Threatened Wildlife and Plants; Revised Recovery Plan for the

6    Northern Spotted Owl (*Strix occidentalis caurina*), 76 Fed. Reg. 38,575 (July 1, 2011) ("2011

7    Recovery Plan"). The 2011 Recovery Plan identified competition with barred owls and the

8    ongoing loss of northern spotted owl habitat from logging as two of the current, leading, and

9    range-wide threats to the northern spotted owl's survival and recovery.

10        61.    The 2011 Recovery Plan included various Recovery Actions. Recovery Actions

11    are near-term recommendations to guide the activities needed to accomplish the recovery

12    objectives and to achieve the recovery criteria such that a species may be delisted from ESA

13    protection.

14        62.    Recovery Action 10 directs federal agencies to "conserve spotted owl sites and

15    high value spotted owl habitat to provide additional demographic support to the spotted owl

16    population. The intent of this recovery action is to protect, enhance, and develop habitat in the

17    quantity and distribution necessary to provide for the long-term recovery of spotted owls." The

18    2011 Recovery Plan states "this recommendation includes currently occupied as well as

19    historically occupied sites."

20        63.    Recovery Action 10 instructs land managers to generally avoid activities that

21    reduce nesting, roosting, and foraging habitat in provincial home ranges of reproductive pairs

22    and that forest management activities that are likely to diminish a home range's capability to

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 15

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1   support spotted owl occupancy, survival, and reproduction in the long term should be

2   discouraged.

3          64.    Recovery Action 32 states: "because spotted owl recovery requires well

4   distributed, older and more structurally complex multi-layered conifer forests on Federal and

5   non-federal lands across its range, land managers should work with the Service. . . to maintain

6   and restore such habitat while allowing for other threats, such as fire and insects, to be addressed

7   by restoration management actions. These high-quality spotted owl habitat stands are

8   characterized as having large diameter trees, high amounts of canopy cover, and decadence

9   components such as broken-topped live trees, mistletoe, cavities, large snags, and fallen trees."

10         65.    Stands that meet the characteristics described by Recovery Action 32 provide

11  spotted owls with high-quality refugia from negative competitive interactions with barred owls

12  where the two species' home ranges overlap.

13         66.    Other recovery actions and recommendations in the 2011 Recovery Plan describe

14  methods to reduce the negative effects of barred owls on northern spotted owls.

15         67.    Despite having been listed as threatened since 1990, the latest demographic

16  information on northern spotted owls indicates a continuing decline in the overall population.

17  **Klamath Forest Plan and Northwest Forest Plan Standards and Guidelines for Protection**

18                          **of Northern Spotted Owls**

19         68.    The Forest Plan contains standards and guidelines relating to endangered and

20  threatened species, like the northern spotted owl. Pursuant to the Forest Plan, the Forest Service

21  shall seek to conserve endangered and threatened species and shall utilize its authorities in

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 16

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    furtherance of the ESA. Management activities must be compatible with the recovery of

2    threatened and endangered plants and animals.

3        69.    Pursuant to the Forest Plan, the Forest Service must emphasize the maintenance

4    or improvement of habitat for species that are listed pursuant to the ESA. Pursuant to the Forest

5    Plan, the Forest Service must use specific project direction found in the Recovery Plans for

6    individual species to help recover the viability of species currently listed as endangered or

7    threatened. The Forest Service must manage to provide "good" habitat conditions for endangered

8    and threatened species, if that habitat type is within the range of the natural ecosystem.

9        70.    The Forest Plan designates different parts of the forest with different land

10   designations. Relevant to the Crawford Project, these designations include "late successional

11   reserves" and "matrix lands." Each of these designations has mandatory standards and guidelines

12   that apply for actions that are planned for those areas.

13       71.    For known northern spotted owl activity centers that are in the matrix land

14   designation, the Forest Service must retain 100 acres of the best northern spotted owl habitat as

15   close to the nest site or activity center as possible.

16       72.    The Forest Plan also categorizes areas within the KNF according to different

17   scenic or visual quality objectives, and the Forest Plan contains mandatory standards for the

18   different areas. Some of those standards relate to wildlife habitat. For example, in areas that are

19   designated as partial retention visual quality objective ("partial retention VQO") the area should

20   be managed for forested, mid- to late-seral stage habitat. Management should promote the

21   growth of closed canopy forest with scattered openings where the area is capable of supporting

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 17

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    forested types of those seral stages. Projects should meet a partial retention VQO as soon after

2    project completion as possible, and at the maximum, within three years of project completion.

3    **<u>Resident Northern Spotted Owls, Activity Centers, and Reproduction in the Crawford</u>**

4    **<u>Project Area</u>**

5    73.    The Crawford Project lies within the California Klamath physiographic province,

6    which is a recovery unit for the northern spotted owl pursuant to the 2011 Recovery Plan. The

7    lands and habitat in the California Klamath province are considered essential to northern spotted

8    owl survival because they help maintain habitat linkages, provide demographic support among

9    spotted owl populations, and temper (to a certain extent) the adverse effects caused by

10    competition with barred owls. The province is considered a stronghold for the species and

11    contains a "source" population of spotted owls.

12    74.    Under the ESA, "critical habitat" is the specific geographic areas that contain

13    features essential to the conservation of an endangered or threatened species and that may require

14    special management and protection. Critical habitat may also include areas that are not currently

15    occupied by the species but will be needed for its recovery.

16    75.    The Project is in the Klamath West Critical Habitat Unit for the northern spotted

17    owl, which plays an important role in northern spotted owl conservation because it is expected to

18    contribute to the maintenance and enhancement of large, interconnected blocks of nesting,

19    roosting, and foraging habitat. These habitat blocks are capable of supporting breeding, survival,

20    and dispersal to an extent that facilitates stable to increasing northern spotted owl populations

21    within the California Klamath recovery unit.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 18

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

76.     Each remaining acre of suitable habitat in the Klamath West Critical Habitat Unit is highly valuable in terms of its contribution to northern spotted owl recovery.

77.     The Project area itself contains at least four northern spotted owl activity centers, which each have an associated core area and home range. Northern spotted owls in the California Klamath province use their home range year-round.

78.     The four identified activity centers in the Crawford Project Area are referred to as: KL 4223, KL 4224, KL 0292, and KL 5005.

79.     Surveys have detected spotted owls in KL 4224 and KL 5005 within the last five years. KL 4224 has been occupied by a pair of owls that successfully reproduced in 2018, 2017, and 2012. KL 5005 has been occupied by a pair of owls that successfully reproduced in 2016, and was occupied by a single owl in 2018. The other two circles are assumed to be occupied based on habitat and earlier detections.

80.     All four activity centers and associated territories are considered important pursuant to the Recovery Plan because they have a reasonable expectation of providing northern spotted owl demographic support, based on the current distribution of habitat.

81.     Even before any of the logging activities proposed by the Crawford Project are implemented, three of the four spotted owl territories are deficient in suitable habitat to support long-term survival and reproduction, and all four core areas have less than the recommended acres of both nesting/roosting and foraging habitat.

82.     Barred owls have been detected in close proximity to the activity centers in the Project area.

**The 2011 Recovery Plan and Crawford Project Impacts to Northern Spotted Owls**

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 19

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

83.     The Crawford Project proposes logging and other vegetation management

activities in 389 acres of nesting, roosting and foraging habitat, including the removal of 242

acres of foraging habitat and degrading of 110 acres of foraging habitat. Removal means that the

acres will no longer function as suitable habitat. Degrading means the activity will have a

negative influence on the quality of habitat by the removal or reduction in habitat elements but

not to the degree where existing habitat function is changed.

84.     The Crawford Project removes components of nesting, roosting, and foraging

habitat in older and more structurally complex multi-layered conifer forests within the home

ranges of reproductive pairs. The EA and other Project documents (collectively, "Project

documents") do not demonstrate or explain how the Crawford Project meets the intent of

Recovery Action 32 or 10.

85.     Extant, high-quality spotted owl habitat must be managed, restored, and

conserved in the face of a declining population and to avoid and mitigate the potential threats

from barred owls.

86.     Known owl sites with reproductive pairs, including KL 4224 and KL 5005, are

the highest priority for conservation under Recovery Action 10. However, the Crawford Project

would remove foraging habitat within the KL 4224 and KL 5005 home ranges.

87.     The Forest Service did not address Recovery Actions 10 or 32 in terms of

prioritizing areas for northern spotted owl conservation.

88.     The Crawford Project would reduce habitat to the point where some areas will no

long support spotted owl foraging (primarily due to the reduction of forest canopy and large

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 20

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1  trees) and other valuable functions such as concealment cover and perches. These impacts are

2  expected to be long-term and adverse.

3    89.    The overall removal of suitable habitat in contiguous blocks within the Project

4  area would result in a long-term adverse effect to reproducing northern spotted owls and their

5  designated critical habitat.

6    90.    The logging and vegetation management activities in foraging habitat is expected

7  to have both short- and long-term decreases in prey abundance, and will have significant effects

8  on flying squirrels, a primary prey species for the northern spotted owls in the Project area.

9    91.    Implementation of the Project is likely to exacerbate competitive interactions

10  between barred owls and northern spotted owls.

11    92.    The Project would remove high value habitat considered important for

12  contributing to the successful reproduction of northern spotted owls, demography, and long-term

13  recovery, and would thus reduce the ability of the Project area to fulfill its conservation role,

14  which is to contribute to demographic and dispersal support to the province.

15    93.    The Project would reduce the reproductive behaviors and output of current,

16  important northern spotted owl pairs in the Project area.

17    94.    The Project was not designed in a way that minimizes effects to existing northern

18  spotted owls.

19    95.    There would be cumulative effects to at least one of the occupied activity centers

20  resulting from the Oak Roadside Hazard project, which overlaps with the home ranges for that

21  activity center, and the Forest Service failed to acknowledge or analyze these cumulative impacts

22  to this activity center and the resident owls.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 21

1

**Background on the Pacific Fisher**

2      96.      The west coast Pacific fisher (*pekania pennanti*) ("fisher") is a medium-sized,

3      light brown to dark blackish brown mammal found only in North America, with the face, neck,

4      and shoulders sometimes being slightly gray, and the chest and underside often having irregular

5      white patches.



6

7      *Pacific Fisher. Photo credit: USFWS*

8      *(https://www.flickr.com/photos/usfws_pacificsw/sets/72157648468662815/)*

9      97.      The presence of fishers is associated with low- to mid- elevation coniferous and

10     mixed-conifer and hardwood forests with characteristics of mid- and late-successional forests

11     (for example, snags of different ages, moderate to dense forest canopies, large-diameter trees,

12     coarse downed wood, and singular features of large snags, tree cavities or deformed trees).

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 22

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1      98.     Fisher dens are structures that are used for three or more days consecutively, often

2    for giving birth to and rearing young. Fishers use trees or snag cavities of larger trees for

3    denning. Fishers often choose areas with canopy cover over 70% for their denning locations.

4      99.     Fishers select resting sites with high proportion of characteristics of late

5    successional forests, including high levels of canopy cover and larger trees.

6      100.    Fishers have home ranges of 4.7 to 36 square miles.

7      101.    Fishers on the west coast of North America have historically occurred in British

8    Columbia, Washington, Oregon and California, and were once well-distributed throughout their

9    range. Today, however, they have been extirpated from vast areas of their historical range,

10   leaving only two subpopulations in Oregon and California: the Northern California Southern

11   Oregon (NCSO) sub-population and the Southern Sierra Nevada (SSN) sub-population. The

12   Crawford Project is located in the range of the NCSO sub-population.

13     102.    The fisher was proposed for listing under the ESA in September 2018.

14     103.    On November 7, 2019, FWS published a proposed rule to list the west coast fisher

15   as a threatened species and proposed a concurrent rule pursuant to Section 4(d) of the ESA. 84

16   Fed. Reg. 60278 (Nov. 7, 2019).

17     104.    The proposed rule describes loss of complex canopy forests and den/rest sites, and

18   fragmentation of habitat from high-severity wildfire, wildfire suppression activities, and

19   vegetation management including fuels reduction treatments as major habitat threats to the

20   fisher. 84 Fed. Reg. at 60285. Other non-habitat threats include exposure to toxicants, including

21   rodenticides that are commonly associated with illegal marijuana cultivation sites on public,

22   private and tribal lands in California and Oregon.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 23

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    105.    Loss and modification of habitat due to logging practices is a limitation on fisher

2    distribution and population growth. The fisher's dependence on specific elements of forest

3    structure, such as microsites for denning and resting, which may be limited on the landscape, is a

4    limitation on distribution and population growth.

5    **Klamath Forest Plan Standards and Guidelines for Protection of Pacific Fishers**

6    106.    Fisher are a "Sensitive Species" for the KNF. Sensitive Species are defined as

7    those plant and animal species identified by a Regional Forester for which population viability is

8    a concern, as evidenced by: (a) significant current or predicted downward trends in population

9    numbers or density or (b) significant current or predicted downward trends in habitat capability

10    that would reduce a species' existing distribution.

11    107.    Sensitive Species must receive special management emphasis to ensure their

12    viability and to preclude population trends towards endangerment that would result in the need

13    for federal listing.

14    108.    The Forest Plan contains standards relating to Sensitive Species. The Forest Plan

15    requires the Forest Service to avoid or minimize impacts to Sensitive Species where possible. If

16    impacts cannot be avoided, the Forest Service must analyze the potential effects on the

17    population or its habitat within the landscape and on the species as a whole.

18    109.    The Forest Plan requires project areas be surveyed for the presence of Sensitive

19    Species before project implementation. If surveys cannot be conducted, project areas should be

20    assessed for the presence and condition of Sensitive Species habitat.

21    110.    The Forest Plan requires the Forest Service to collect information on Sensitive

22    Species to assess population distribution and habitat associations, identify suitable habitat for

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 24

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1   each Sensitive Species at the Forest scale, and inventory a portion of the suitable habitat each

2   year.

3       111.    The Forest Plan requires the Forest Service to assess habitat conditions at

4   occupied sites and, based on the assessment, use appropriate management techniques to maintain

5   or enhance habitat suitability.

6                   **Crawford Project and Cumulative Impacts on Pacific Fisher**

7       112.    Fishers have been detected and sighted in the Crawford Project area. Most

8   detections on or adjacent to the KNF have been located in mid- to late-seral true fir, mixed

9   conifer, and mixed conifer-hardwood habitats.

10      113.    The Project would negatively impact fishers because it would remove key habitat

11  elements such as large conifers and reduce canopy to a level lower than what is suitable for

12  fishers. For example, almost all activities in natural stands that contain fisher habitat would

13  reduce canopy cover to less than 60 percent, which results in the habitat being unsuitable for

14  fisher use and occupancy.

15      114.    The Project would remove fisher foraging habitat. Project documents state that

16  225 acres of fisher foraging habitat would be removed but provide no background or analysis

17  regarding the effects of the proposed habitat removal.

18      115.    Removal of large trees would remove possible denning and resting locations for

19  fisher.

20      116.    Impacts to fisher would be combined with impacts from the Oak Roadside Hazard

21  Project, which will also treat fisher habitat within the distance of a fisher home range.

22

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 25

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1        **The Crawford Project Timeline and Change of Course on EIS**

2        117.    On August 4, 2011, Defendants issued a scoping notice for the Crawford Project.

3    The notice proposed logging activities in the Happy Camp/Oak Knoll Ranger District of the

4    KNF, specifically on lands approximately 10 miles south of Happy Camp, Siskiyou County,

5    California. This scoping letter identified 268 acres of commercial logging in "natural stands"

6    (stands that have been unmanaged or minimally managed), along with 179 acres of commercial

7    thinning in "plantations" (stands that were logged and re-planted sometime in the last

8    approximately 60 years), and noncommercial thinning and other vegetation management

9    activities on an additional approximately 1100 acres.

10        118.    Plaintiffs timely submitted comments on the 2011 scoping notice in which they

11    made specific requests for the NEPA analysis and alternatives, including retention of northern

12    spotted owl habitat, retention of old-growth and mature trees, canopy cover of at least 60%,

13    surveying for fishers, and comprehensive analysis of cumulative impacts.

14        119.    On January 21, 2014, the Forest Service published Notice of Intent to Prepare an

15    Environmental Impact Statement ("2014 EIS Notice") for the Crawford Project in the Federal

16    Register. The Notice provides that because the Project might result in a "likely to adversely

17    affect" determination for the northern spotted owl and its habitat, the Forest Supervisor had

18    decided to prepare an EIS for the Project as scoped in 2011.

19        120.    In response to the 2014 EIS Notice, Plaintiffs timely submitted comments, which

20    expressed support for plantation and precommercial logging but again requested that the Forest

21    Service not remove northern spotted owl habitat or engage in large diameter commercial logging

22    in northern spotted owl habitat. Plaintiffs also requested that the Forest Service analyze

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 26

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1  cumulative impacts of other projects affecting owls in the vicinity, and the impacts of barred

2  owl. Finally, Plaintiffs again requested fisher surveys be conducted.

3       121.    On December 27, 2018, the Forest Service published a Withdrawal of Notice of

4  Intent to Prepare an Environmental Impact Statement ("2018 EIS Withdrawal") in the Federal

5  Register. This notice stated that upon further evaluation, there were no expected significant

6  impacts to the human environment associated with the project.

7       122.    Between the 2014 EIS Notice and the 2018 EIS Withdrawal the Forest Service

8  did not change the amount or type of logging proposed. During that time, northern spotted owl

9  populations declined, but two pairs of resident owls in the Project area (KL 4224 and KL 5005)

10  had reproductive success.

11       123.    On July 2, 2019, the Forest Service issued a notice of availability of the draft

12  environmental assessment ("EA") for the Crawford Project. That notice incorrectly stated that

13  the Project was not likely to adversely affect northern spotted owl and critical habitat.

14       124.    The Crawford draft EA, issued on August 1, 2019, analyzed four alternatives

15  including a no action alternative.

16       125.    Alternative 4 proposes logging in more acres of natural stands than the action

17  initially scoped in 2011, and also proposes two new logging prescriptions (understory fuels

18  reduction and fuel breaks), and eliminated underburning as a prescription.

19       126.    The Forest Service issued a corrected notice for the EA on August 7, 2019

20  because "the determination that the Crawford Project is not likely to adversely affect northern

21  spotted owl and critical habitat was an error." The corrected notice stated that "after clarification

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 27

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    of the silvicultural prescriptions the appropriate conclusion is that the Crawford Project is likely

2    to adversely affect northern spotted owl and critical habitat."

3        127.    Plaintiffs filed timely comments on the draft EA, in which they reiterated their

4    general support of plantation thinning and their concerns about proposed logging in mature

5    forests comprising critical habitat within northern spotted owl activity centers that would lead to

6    the "take" of reproducing owl pairs. Under the ESA, the term "take" means to "harass, harm

7    pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such

8    conduct."

9        128.    The Forest Service issued a draft Decision Notice on or about September 17,

10   2019, in which Defendant Grantham stated that she intended to select Alternative 4, which

11   includes 297 acres of commercial logging in natural stands, and a total of 1,674 acres of

12   vegetation management activities.

13       129.    On October 23, 2019, Plaintiffs filed a timely objection to the draft Decision

14   Notice selecting Alternative 4, pursuant to 36 C.F.R. Part 218. Plaintiffs objected to, inter alia,

15   Defendants' failure to prepare an EIS, the decision to log old-growth and mature trees, the

16   removal of northern spotted owl habitat inside already deficient home ranges, and the failure to

17   analyze and disclose impacts to fisher.

18       130.    On January 24, 2020, the Forest Service sent Plaintiffs a response to their

19   objections, signed by Defendant Gyant. The objection response letter did not resolve Plaintiffs'

20   objections, and authorized Defendants to finalize the Project.

21       131.    The Forest Service issued its final Decision Notice on February 11, 2020.

22       132.    The Final Decision Notice authorizes Alternative 4.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 28

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    133.    The activities described in the EA and approved in the Decision Notice include

2    six different types of logging activities:

3    a.    Commercial logging in natural stands: Logging prescriptions include selectively

4         logging trees with no diameter limit in a manner that results in a reduction in canopy

5         cover to approximately 10 to 70 percent, with the majority leaving 40 percent canopy

6         cover or less. These prescriptions include a logging strategy called "free thinning"

7         which removes all trees within the canopy drip line of a particular tree, regardless of

8         size or age of the other trees.

9    b.    Commercial logging in plantations: Logging prescriptions include logging with no

10        diameter limit to allow for a range of spacing of 20 to 40 feet between trees.

11   c.    Precommercial thinning with pile burning: Logging prescriptions include logging

12        hardwoods less than 8 inches in diameter at breast height and conifers less than 10

13        inches in diameter at breast height to allow for spacing of 25 to 35 feet between trees.

14   d.    Understory fuels reduction and fuel break: Logging prescriptions include logging of

15        hardwoods less than 8 inches in diameter at breast height and conifers less than 10

16        inches in diameter at breast height to allow for spacing of 20 to 25 feet between trees.

17   e.    Non-commercial thinning/Wildland Urban Interface: Logging prescriptions include

18        logging of trees up to 10 inches in diameter at breast height.

19   134.    The Project also proposes non-logging activities which include meadow and

20   wetland restoration with pile burning, and mastication of understory vegetation and fuels.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 29

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1      135.    The Decision authorizes logging and other vegetation management activities in

2    northern spotted owl foraging habitat inside four activity centers, as well as in fisher habitat and

3    in riparian areas.

4      136.    The Decision authorizes removal of 242 acres of northern spotted owl foraging

5    habitat, and degrading of 110 acres of foraging habitat for northern spotted owls, which includes

6    seven percent of the foraging critical habitat in the action area.

7      137.    Along with its Final Decision Notice, the Forest Service issued a Finding of No

8    Significant Impact, in which it found that the Crawford Project would have no significant impact

9    on the human environment and thus declined to prepare an EIS for the project.

10     138.    The issuance of the final Decision Notice and Finding of No Significant Impact is

11    a final agency action subject to the judicial review provisions of the APA.

12            **The Crawford Biological Opinion and Incidental Take Statement**

13     139.    Pursuant to Section 7 the ESA, 16 U.S.C. § 1536, Defendants were required to

14    consult with FWS regarding the impacts of the Crawford Project because the Project is likely to

15    adversely affect the northern spotted owl, which is a threatened species.

16     140.    Communications between Defendants and FWS relating to the Project began in

17    2009. During that time FWS repeatedly described ways that Defendants could reduce impacts to

18    northern spotted owls by making changes to the Project. Defendants did not make the suggested

19    changes, or made only minimal changes that failed to appreciably reduce the impacts.

20     141.    On October 22, 2019, FWS issued its Biological Opinion and Incidental Take

21    Statement ("BiOp") for the Crawford Project.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 30

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1      142.    Upon information and belief, the BiOp was not made available to the public until

2  after Plaintiffs had timely submitted their objections to the Forest Service and after the objection

3  period had closed. Thus, Plaintiffs were not able to review the information in the BiOp when

4  providing comments on or objections to the Project.

5      143.    FWS concluded that the Project is likely to adversely affect northern spotted owls

6  and their critical habitat, but not to the extent that it will jeopardize the continued existence of the

7  species, or result in the destruction or adverse modification of designated critical habitat.

8      144.    The bases for the FWS' determination of adverse effects as to individual owls and

9  critical habitat include the extent to which the Project would reduce basal area (density of trees in

10  a stand), canopy closure and cover, and layering in the stand that removes foraging habitat and

11  overall suitable habitat to the point of "take", as well as physical and biological features of

12  foraging habitat being removed within a critical habitat subunit that has already had a large

13  amount of suitable habitat removed.

14      145.    FWS concluded that there is reasonable certainty that implementation of the

15  Project would result in the incidental take of two adult northern spotted owl pairs.

16                              **FIRST CLAIM FOR RELIEF**

17                        **(Compliance with NFMA and the APA)**

18      146.    Plaintiffs repeat and hereby incorporate by reference the allegations contained in

19  the above paragraphs.

20  **Count 1: Failure to comply with the Klamath Forest Plan and the Northwest Forest Plan**

21        **standards and guidelines for protection and recovery of northern spotted owls**

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 31

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1       147.    To comply with NFMA and its implementing regulations, the Forest Service had

2    a duty to demonstrate that all management activities comply with the Standards and Guidelines

3    of the Klamath Forest Plan and the Northwest Forest Plan. 16 U.S.C. § 1604(i).

4       148.    The Project authorizes removal of 242 acres of northern spotted owl foraging

5    habitat and degrading of 110 acres of northern spotted owl foraging habitat. The Forest Service

6    failed to demonstrate how the logging activities in northern spotted owl habitat is consistent with

7    Standards and Guidelines for protection and recovery of northern spotted owls, including, for

8    example:

9       a.   The Project is not compatible with the recovery of northern spotted owl and the

10           Forest Service is not utilizing its authorities in furtherance of the Endangered Species

11           Act, as required by the Klamath Forest Plan.

12       b.   The Project is not consistent with the Recovery Plan, including Recovery Actions 10

13           and 32, as required by the Klamath Forest Plan.

14       c.   The Project does not maintain or improve northern spotted owl habitat in the short- or

15           long-term and does not provide "good" habitat conditions for the northern spotted

16           owl, as required by the Klamath Forest Plan.

17       d.   The Forest Service has failed to demonstrate how the habitat downgrading and

18           removal proposed in northern spotted owl habitat resulting in the "take" of

19           reproducing owl pairs produces benefits for the species that clearly outweigh their

20           impacts.

21       e.   The Project documents do not explain or demonstrate how 100 acres of the best

22           habitat are protected and retained around each of the four activity centers in the

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 32

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1        project area, particularly when logging that removes high-quality foraging habitat are

2        proposed in close proximity to those centers, as required by the Forest Plan.

3    f.    Parts of the Project area are in the partial retention VQO designation. The Project

4        documents do not explain or demonstrate how logging in areas within the partial

5        retention VQO designation would promote the growth of closed canopy forests or

6        would meet partial retention VQOs as required by the Forest Plan, particularly where

7        the logging in many units where canopies are currently at high closure levels would

8        result in canopy closure of less than 40 percent. The Project documents fail to explain

9        or demonstrate how this logging would achieve canopy closure within 3 years of the

10        completion of the project as required by the Forest Plan.

11    149.    By failing to demonstrate that the Project is consistent with Standards and

12    Guidelines for protection and recovery of northern spotted owls, Defendants' approval of the

13    Project is arbitrary, capricious, an abuse of discretion, not in accordance with law, and without

14    observance of procedure required by NMFA and its implementing regulations, in violation of 5

15    U.S.C. § 706(2).

16    **Count 2: Failure to comply with the Klamath Forest Plan and the NWFP standards**

17    **and guidelines for protection of fisher.**

18    150.    To comply with NFMA and its implementing regulations, the Forest Service had

19    a duty to demonstrate that all management activities comply with the Standards and Guidelines

20    of the Klamath Forest Plan. 16 U.S.C. § 1604(i).

21    151.    Fishers are identified as a Sensitive Species in the Forest Plan.

22    152.    Fishers have been detected and sighted in the Project Area.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 33

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

153.     The Project would negatively impact fisher habitat, including habitat for denning, resting, and foraging. The Project documents state, without support, that the Project would remove 225 acres of fisher foraging habitat. There is no discussion of the surveyed or likely location of fisher dens, or denning and resting habitat.

154.     The Forest Service failed to demonstrate how the logging activities in fisher habitat is consistent with Standards and Guidelines for protection fisher, including, for example:

a.     The Project documents fail to explain or document how the Forest Service avoided or minimized impacts to the fisher, as required by the Forest Plan.

b.     The Project documents fail to explain or demonstrate whether the Forest Service surveyed the Project area for the presence of fisher, as required by the Forest Plan.

c.     The Project documents fail to explain or demonstrate how the Forest Service determined where occupied fisher sites are located in the Project area, how it assessed those sites, and how the proposed logging would maintain or enhance habitat suitability for the fisher, as required by the Forest Plan.

155.     By failing to demonstrate that the Project is consistent with Standards and Guidelines for protection of the fisher, Defendants' approval of the Project is arbitrary, capricious, an abuse of discretion, not in accordance with law, and without observance of procedure required by NMFA and its implementing regulations, in violation of 5 U.S.C. § 706(2).

## **SECOND CLAIM FOR RELIEF**

### **(Compliance with NEPA and the APA)**

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 34

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    156.    Plaintiffs repeat and hereby incorporate by reference the allegations contained in

2    the above paragraphs.

3    **Count 1: Failure to prepare an EIS**

4    157.    NEPA requires federal agencies to prepare an EIS when a major federal action is

5    proposed that may significantly affect the quality of the environment. 42 U.S.C. § 4332(2)(C).

6    158.    An EA must provide sufficient information, evidence, and analysis for

7    determining whether to prepare an EIS or issue a finding of no significant impact. 40 C.F.R.

8    § 1508.9(a). The information presented in the EA must be of "high quality" and include

9    "accurate scientific analysis." 40 C.F.R. 1500.1(b). The agency must adequately explain its

10    decision not to prepare an EIS by supplying a convincing statement of reasons why potential

11    effects are insignificant.

12    159.    In determining whether a proposed action may "significantly" impact the

13    environment, the agency must consider both the context and the intensity of the action. 40 C.F.R.

14    § 1508.27.

15    160.    CEQ regulations provide relevant factors for evaluating intensity, including, *inter*

16    *alia*, the degree to which the action may adversely affect an endangered or threatened species or

17    its critical habitat; whether the action threatens a violation of Federal, State, or local law or

18    requirements imposed for the protection of the environment; the degree to which the effects on

19    the quality of the human environment are likely to be highly controversial; the cumulative

20    impacts of the project when considered with other actions; and impacts that may be both

21    beneficial and adverse. 40 C.F.R. 1508.27(b).

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 35

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    161.    If the agency's action may be environmentally significant according to any of the

2    criteria, the agency must prepare an EIS.

3    162.    The Crawford Project may cause a significant effect on the environment because,

4    *inter alia*,

5    a.    It would affect and is likely to adversely affect the threatened northern spotted owl

6        and its critical habitat, including causing long-term impacts in four northern spotted

7        owl activity centers that are considered a high priority for conservation, and reducing

8        the reproductive effectiveness of two of the last remaining reproductively successful

9        pairs of owls on the KNF. It would exacerbate conflicts and competition between

10        northern spotted owls and barred owls in the Project Area, even though barred owls

11        are the primary threat to the survival of the species. It would cause the incidental take

12        of two reproductive pairs of northern spotted owls and would remove 242 acres of

13        northern spotted owl foraging habitat in activity circles deemed "critical habitat" by

14        the FWS that are already habitat deficient.

15    b.    It is inconsistent with the Forest Plan, the NWFP, and the northern spotted owl 2011

16        Recovery Plan, because the Forest Service has failed to ensure consistency with:

17        i)    Recovery Actions 10 and 32, which require avoiding impacts to occupied

18            activity centers and preserving high quality habitat.

19        ii)    Standards and Guidelines designed to protect the northern spotted owl and

20            its habitat.

21        iii)    Standards and Guidelines designed to protect the Pacific fisher, which is

22            proposed for listing as threatened and which occurs in the project area.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 36

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1      c.   The effects on individual fishers and the local fisher population are uncertain because

2           the Forest Service has not surveyed for fisher dens within the project area.

3      d.   There is uncertainty and controversy relating to the environmental impacts of the

4           project as demonstrated by, for example, the Forest Service's initial decision to

5           prepare an EIS, but ultimate decision to prepare only an EA, despite increasing the

6           acreage of spotted owl habitat being logged and the demographic changes to spotted

7           owls range-wide and in the Project area.

8      e.   The Forest Service failed to adequately analyze cumulative impacts from other

9           projects, including the Oak Roadside Hazard Project, which would treat the same

10          occupied spotted owl home range and potential fisher home ranges.

11     163.   Defendants failed to articulate a rational connection between the facts found in the

12   EA and finding of no significance, and the decision made; failed to consider important aspects of

13   the problem; offered explanations that run counter to the available evidence; and failed to

14   observe the procedures required by law.

15     164.   Defendants' failure to prepare an EIS is arbitrary, capricious, an abuse of

16   discretion, not in accordance with, and without observance of procedure required by NEPA, in

17   violation of 5 U.S.C. § 706(2).

18   **Count 2: Failure to take hard look at the direct, indirect and cumulative impacts of the**

19   **proposed action on northern spotted owl and fisher.**

20     165.   NEPA requires federal agencies to take a "hard look" at the environmental

21   consequences of projects before taking action.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 37

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    166.    An agency must consider the direct, indirect, and cumulative impacts of the

2    proposed action.

3    167.    Information of high quality and scientific accuracy must be used in the analysis.

4    168.    Defendants failed to take the requisite hard look at the impacts of the Project on

5    the northern spotted owl. For example, Defendants failed to disclose and analyze information

6    relating to barred owl occupancy trends in the Project area, interactions between barred owls and

7    northern spotted owls, and the likely exacerbation of those interactions as a result of

8    implementation of the Project. Defendants also failed to disclose and analyze the regional

9    significance of the loss of the owl pairs in the Project area.

10    169.    Defendants failed to take a hard look at the cumulative impacts of the Project and

11    other projects that overlap with occupied spotted owl home ranges and impact spotted owl

12    habitat, including but not limited to the Oak Roadside Hazard project.

13    170.    Defendants failed to take the requisite hard look at the impacts of the Project to

14    Pacific fisher, a Sensitive Species that has been detected and sighted in the Project area. The

15    Project would remove fisher habitat. Defendants failed to provide or analyze high-quality data

16    regarding the environmental baseline for the fisher within the Project area. The Project

17    documents omit information on fisher populations and individuals that would be impacted by the

18    Project, despite the proposed listing of the fisher as threatened.

19    171.    Defendants failed to take a hard look at the cumulative impacts of the Project and

20    other projects that overlap with potential fisher home ranges and impact fisher habitat, including

21    but not limited to the Oak Roadside Hazard project.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 38

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

172.    Defendants failed to provide high quality data and analysis necessary to support the finding of no significant impact for the Project.

173.    Defendants failed to articulate a rational connection between the facts found in the EA and Project documents and the decision made; failed to consider important aspects of the problem; offered explanations that run counter to the available evidence; and failed to observe the procedures required by law.

174.    Defendants' failure to take a hard look at the environmental consequences of the decision is arbitrary, capricious, an abuse of discretion, not in accordance with, and without observance of procedure required by NEPA, in violation of 5 U.S.C. § 706(2).

**Count 3: Failure to modify, update, and supplement the NEPA analysis for the Project to address significant new information and changed circumstances.**

175.    Once an agency has prepared an EA and issued a Finding of No Significant Impact, an agency must supplement its analysis if there are "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1)(ii).

176.    Defendants have an on-going duty to take a "hard look" at any new information and changed circumstances, in a timely manner, to determine whether the Project, individually or cumulatively with other actions, could result in significant effects to the human environment, including specific species.

177.    There is an obligation to supplement an EA if major federal action has yet to occur and the new information shows that the remaining action will affect the quality of the human environment in a significant manner or to a significant extent not already considered.

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 39

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

178.    On December 11, 2019, Plaintiffs sent Defendants a letter requesting that

Defendants consider and analyze as significant new information the FWS notice of proposed

listing and 4(d) rule relating to the Pacific fisher ("fisher notice").

179.    The Project, which is a major federal action, has yet to occur.

180.    The new information contained in the listing notice has substantially and

significantly altered Defendants' basic assumptions in the Project documents relating to the

Project's impacts on fisher.

181.    Defendants failed to consider or take a hard look at the new information included

in the listing notice to determine whether a supplemental EA or new EIS should be prepared.

182.    Defendants' failure to supplement the environmental analysis in the face of

significant new information and changed circumstances is in violation of NEPA for unlawfully

withholding or unreasonably delaying required agency action. In the alternative, to the extent

that Defendants made an affirmative decision not to supplement the environmental analysis, such

decision is arbitrary, capricious, an abuse of discretion, not in accordance with, and without

observance of procedure required by NEPA, in violation of 5 U.S.C. § 706(2).

**RELIEF REQUESTED**

WHEREFORE, the Plaintiffs respectfully request the following relief from this Court:

1.    Declare that Defendants, and each of them, have violated NFMA and its

implementing regulations by issuing a decision authorizing a project that is

inconsistent with the Klamath Forest Plan and the Northwest Forest Plan;

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 40

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    2.    Declare that Defendants, and each of them, have violated NEPA by failing to issue an

2          EIS for the Crawford Vegetation Management Project, and failing to take a hard look

3          at the direct, indirect, and cumulative impacts of the Crawford Project;

4    3.    Declare that issuance of the Crawford Project Decision Notice and Finding of No

5          Significant Impact and Final Environmental Assessment are arbitrary, capricious, an

6          abuse of discretion and not in accordance with, and/or without observance of

7          procedure required by the APA, 5 U.S.C. § 706(2)(A), (D);

8    4.    Declare that Defendants' failure to supplement the environmental analysis in light of

9          significant new information and changed circumstances is unlawful and in violation

10         of NEPA and the APA;

11   5.    Issue an order vacating the Decision Notice and Finding of No Significant Impact and

12         remanding the EA to the Forest Service with instructions to supplement the analysis

13         in compliance with applicable law and to prepare an EIS;

14   6.    Issue an injunction prohibiting Defendants from implementing the Crawford Project

15         until they have prepared an EIS and can demonstrate compliance with the

16         requirements of NFMA and NEPA;

17   7.    Award to Plaintiffs costs, including expenses, expert witness fees, and reasonable

18         attorney fees under applicable law; and

19   8.    Grant Plaintiffs such further relief as may seem to this Court to be just, proper, and

20         equitable.

21   ///

22   ///

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 41

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1     DATED this 27 day of April, 2020.

2

*Thomas Wheeler*

3
4     Thomas E. Wheeler, CSB No. 304191
5     LOCAL COUNSEL
6
7     Meriel L. Darzen, OSB No. 113645,
8     *applicant, pro hac vice*
9     meriel@crag.org
10    Oliver J. H. Stiefel, OSB No. 135436,
11    *applicant, pro hac vice*
12    oliver@crag.org
13    Crag Law Center
14    3141 E Burnside Street
15    Portland, Oregon 97214
16    Phone: 503-525-2725
17
18    *Attorneys for Plaintiffs*
19
20

COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 42

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*